UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

YVETTE BROWN,                                      Case No.: 7:16-cv-09118
                    Plaintiff,


          v.


DR. BENJAMIN KUR, DDS, AND
WESTCHESTER ORAL & MAXILLOFACIAL
ASSOCIATES, PLLC,
                    Defendants.
------------------------------------------------------------------X




**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-
MOTION FOR SANCTIONS AND IN REPLY TO PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT MOTION FOR SANCTIONS
PURSUANT TO F.R.C.P. RULE 11 AND 28 U.S.C. §1927**

# TABLE OF CONTENTS

I. STATEMENT IN RESPONSE AND IN REPLY.....................................................................1

II. MEMORANDUM OF LAW AND ARGUMENT ................................................................6

A. THE RULE 11 MOTION WAS TIMELY SERVED AND THE COURT'S RULING
SHOULD BE DEFERRED UNTIL THE CONCLUSION OF THIS ACTION ..................6

B. PLAINTIFF'S FACTUAL ALLEGATIONS LACK/LACKED EVIDENTIARY
SUPPORT – THE MOTIONS SHOULD BE DECIDED AT THE END OF
LITIGATION ....................................................................................................................7

a. Brown's Statements and "Personal Knowledge" Regarding the Defendants Alleged
Discriminatory Actions ...............................................................................................10

i. Plaintiff's Claims Regarding Follow-Up Care and Prescribed Medication................13

ii. Dr. Kur's Conversations with the Westchester County Department of Health..........16

b. Ms. Brown's Claims Regarding New York State and Westchester County Human
Rights Laws...................................................................................................................18

c. Ms. Brown's Claims Regarding Federal Financial Assistance.....................................19

C. THE RULE 11 MOTION IS NOT AN IMPROPER ATTEMPT TO SUBSTITUTE
SANCTIONS FOR A MOTION FOR SUMMARY JUDGMENT OR A MOTION TO
DISMISS OR FOR AN IMPROPER PURPOSE ...............................................................20

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Archie Comic Publications, Inc. v. Decarlo* (S.D.N.Y. Nov. 21, 2000) No. 00 Civ. 5686 (LAK), 2000 WL 1731341, at *1 ................................................................................... 7

*Cahill v. Rosa*, 89 N.Y. 2d 89 N.Y.2d 14, 21, 24 (1996)........................................... 18

*D'Amico v. Commodities Exch. Inc.*, 235 A.D.2d 313, 314 (1997)............................. 19

*General Motors Acceptance Corp. v. Bates* (5th Cir.1992) 954 F.2d 1081, 1086–1087 .............. 7

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.* (S.D.N.Y. May 2, 2000) No. 00 Civ. 1115(LAK), 2000 WL 528633, at *1........................................................... 7

*In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003)........................................ 6

*Mann v. G &G Mfg., Inc.,* 900 F.2d 953, 960 (6th Cir. 1990)..................................... 7

*O'Callaghan v. Sifre,* 242 F.R.D. 69, 75 (S.D.N.Y. 2007) .......................................... 3

*Safe-Strap Company, Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 (S.D.N.Y. 2003) ............... 6

*Saltz v. City of New York*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001)......................... 8

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 175 (2d Cir. 2012)...................................................................................... 3

*UY v. Bronx Mun. Hos. Ctr.*, 182 F.3d 152, 156 (2d. Cir. 1999)................................ 10

*Wallace v. Life Ins. of North America* (S.D.N.Y. Feb. 22, 1996) No. 93 Civ. 6056(CSH), 1996 WL 79329, at *1 ............................................................................................ 7

**Statutes**

28 U.S.C. §1927................................................................................................ 1

Fed. R. Civ. P. Rule 11 (Advisory Comm. 1983 Amendment) ..................................... 4

Fed. R. Civ. P. Rule 11 (Advisory Comm. 1993 Amendment) .................................. 6, 8

Federal Rules of Civil Procedure Rule 11 .............................................................. 1, 10

Defendants, Dr. Benjamin Kur, DDS ("Dr. Kur") and Westchester Oral & Maxillofacial Associates, PLLC ("Westchester Oral") (collectively the "Defendants"), by and through undersigned counsel, respectfully submit this memorandum of law in opposition to Plaintiff's cross-motion for sanctions ("cross-motion" or the "Plaintiff's Memorandum") against the Defendants and their counsel, and in further support of the Defendants' motion for sanctions ("Rule 11 motion") against Plaintiff, Yvette Brown ("Brown" or "Plaintiff"), and her counsel, Lambda Legal Defense & Education Fund, Inc. ("Lambda Legal"), pursuant to Federal Rules of Civil Procedure Rule 11, as well as against Lambda Legal pursuant to 28 U.S.C. §1927 and the inherent powers of this Court[1]. In opposition and reply thereto, Defendants state:

## I. STATEMENT IN RESPONSE AND IN REPLY

Dr. Kur has spent his entire life practicing medicine to help people and fulfilling his duty to provide care to his patients and protect their health. Prior to the Plaintiff's specious claims, Dr. Kur has never been accused of being discriminatory, let alone against persons, who have been diagnosed ████████. Dr. Kur and Westchester Oral have seen numerous HIV-positive patients over the years with no issue and will continue to do so. Dr. Kur has also practiced medicine with medical professionals who are HIV-positive without incident. Here, the phrase "primum non nocere" (first do no harm) is particularly relevant. Dr. Kur had and has an obligation to do no harm to his patients. As such, it is essential patients reveal their medical conditions to him so he can properly treat his patients, especially in situations where medication is involved.

In this matter, Plaintiff was proscribed ██████ after her surgery to deal with pain, which is typical after the procedure she had (even though the pain varies in patients). However,

---

[1] On April 3, 2017, this Court entered its order clarifying that the Defendants' memorandum would address both the Plaintiff's response to the Rule 11 motion as well as the her cross-motion for sanctions. In addition, the Court permitted the Defendants' memorandum to be twenty-five (25) pages.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

█████ is not to be mixed with some medications and can have adverse effects with others, including █████████. These combinations can produce serious and possibly life threatening reactions. The Plaintiff did not disclose her ████████, or even the medication she was taking, to Dr. Kur or Westchester Oral putting her own health at issue (and those ramifications on the Defendants' watch and under their name). When this was discovered, Dr. Kur changed her medication to ██████, to protect her health, which she had put at issue by failing to disclosure her ██████████. This is not a discriminatory act, but an act that is required by any doctor, i.e., to protect their patient's health. Dr. Kur never denied Plaintiff any services and, in fact, she never even sought additional services after her surgery from any dental professional (including but not limited to her referring dentist). Dr. Kur's entire life's work has been put at stake due to fallacious accusations by the Plaintiff that were signed off on by her counsel in the complaint [ECF No. 4].[2]  Prior to filing the lawsuit, Defendants' counsel provided dental records, and information to the Plaintiff's counsel, who despite same moved forward with this frivolous lawsuit. Now, Plaintiff and Plaintiff's counsel contend the Rule 11 motion was improperly filed and filed for improper purposes.   It was not.  As more fully discussed herein, Defendants' request that a ruling not be made now, rather this Court should defer ruling on the Rule 11 motion until this case concludes.

"Talk is cheap", "put your money where your mouth is", *et cetera*—all idioms that reflect a common underlying theme that in order for one's statements to be taken seriously, one must take a formal action threatening stern consequences. Anything less, and others will think the statements insignificant.   The same theme applies to civil procedure—that for purposes of Rule

---

[2] As an example, in the complaint, Plaintiff alleges that "[a]s a result of Defendants' treatment of her, Ms. Brown experienced serious psychological and emotional distress."  Complaint at ¶ 41.  In her recent interrogatory answers, Plaintiff has stated that: "Ms. Brown states that she has not received treatment for any psychiatric, psychological and/or emotional injury either before or as a result of the acts and/or omissions alleged in the Complaint."  *See* Brown's Second Amended Response to Interrogatory No. 22.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

11 sanctions, an informal warning letter (or phone call) is insufficient, and formal service of a motion is required. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 175 (2d Cir. 2012) ("The safe-harbor provision is a strict procedural requirement."); *O'Callaghan v. Sifre,* 242 F.R.D. 69, 75 (S.D.N.Y. 2007) ("[A] Rule 11 motion that is not made in compliance with this procedural aspect of the Rule is subject to denial on this basis alone."). Because Rule 11 states that *the motion* must be served under Rule 5 before it is filed with the court, "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion" does not satisfy Rule 11's procedural requirements. *Id.* at 175. Here, the Defendants sent the required Rule 11 warning to the Plaintiff in strict conformity with this Court's rules and the Federal Rules of Civil Procedure. In fact, it went above and beyond what is required by submitting affidavits and exhibits to support the motion.[3] *Id.* at 176. The failure to immediately raise such issues with an opposing party, even if it is at the onset of a case, would render the purpose of Rule 11 meaningless. That is because the purpose of the Rule is to bring to the opposing party's attention of the violation and provide them an opportunity to cure it.

By requiring parties to notify the other side that they will file a motion for sanctions with the court unless the other party withdraws or corrects the matter, the rule provides a party facing potential sanctions with a "safe-harbor." Anything else, such as a phone call or letter, only prompts the recipient to guess at the opponent's seriousness. A formal and properly served motion, on the other hand, unambiguously alerts the recipient of the sending party's intentions. The later is the formal act that triggers the safe-harbor provision because the act clearly notifies

---

[3] Notably, in *Star Mark,* the Court articulated the rule in this Circuit that Rule 11 "does not require the service of a memorandum of law or affidavits, nor does it use the words 'formal fully supported motion.'" *Id.* (citation omitted). In fact, the Court declined "to read into the rule [Rule 11] a requirement that a motion served for purposes of the safe harbor period must include supporting papers such as a memorandum of law and exhibits." *Id.*

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

the party receiving the motion that sanctions are "on the table." Here, the Rule 11 motion and safe harbor notice was timely served. *See* § II(A). The Plaintiff and its counsel were and are on notice of the alleged Rule 11 violations, which include presenting a frivolous complaint. They choose to not withdraw the complaint and allow it to proceed on its merits. Now, the stage has been set for the Court to consider and rule upon Rule 11 sanctions at the conclusion of the action, which will allow for the Court to award sanctions from the date of the notice forward. *See* § II(A); *see also* Fed. R. Civ. P. Rule 11 (Advisory Comm. 1983 Amendment). There is nothing improper by such conduct notwithstanding the Plaintiff's protestation, and the Rule 11 motion has done exactly what it is supposed to do, i.e., put them on notice that sanctions are "on the table" for the Court to rule upon when the case concludes. The claim that the Rule 11 motion was filed and served for an improper purpose is without merit, an.[4] *See* The Plaintiff's Memorandum at p. 1. The complete transcript from the June 27, 2017 pre-motion conference is attached hereto as Exhibit "A" and referred to herein for citation purposes as "Tr". The purpose of a Rule 11 motion was to put the Plaintiff (and her counsel) on notice, and there is nothing improper with same, which is exactly what Defendants' counsel stated at the conference:

- "Your Honor, but that's the purpose of an early Rule 11 motion is to put them on notice, saying, hey you're shooting for the sun." Tr. at 10:2-6.

- "The premise of our Rule 11 motion is they made claims. We're saying these are not viable claims. Here is the evidence to support it." TR at 9:11-13.

- "Judge, I'm looking at it from the angle of an individual and his company that have been sued and the claims are frivolous. We know it from the outset that they're frivolous and, therefore, we let the plaintiff know, plaintiff, your claims are frivolous. These are the reasons why and here's the evidence that we have to support it." Tr. at 10:12-17.

- "They haven't done their due diligence. They haven't reached out to the Westchester County Department to obtain confirmation of Brown's position. And

---

[4] The quotes cited by Plaintiff, through her counsel, are inaccurate, incomplete, and wholly taken out of context.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

> frankly, that's frivolous, especially when you're now on notice. They had notice
> of it. That's the purpose of the safe-harbor period is, okay, you're put on notice."
> Tr. at 11:7-13.

Moreover, Defendants' counsel could not have been clearer when he was asked by the Court "[a]re you asking me for discovery for purposes of making a sanctions [motion]?": MR. DAVIDOFF: "No, your Honor." Tr. at 18:4-6. The position that the Defendants and their counsel have used the Rule 11 motion for an improper purpose lacks merit, is controverted by the transcript, and refuted further in Defendants' counsel's Declaration, which is attached as Exhibit "B" ("Declaration"). Conspicuously missing from the cross-motion is any sworn statement from the Plaintiff (the only sworn evidence comes from her counsel). That is because, any reaction Dr. Kur may have had related to finding out about the Plaintiff's ███████, was not brought on by any discriminatory beliefs, but the fact that the Plaintiff lied regarding her medical history. Dr. Kur vehemently denies calling the Plaintiff "disgusting" or a "criminal" upon learning of her ███████, a fact corroborated by several of Dr. Kur's employees, one of which was in the room when the Plaintiff claims the alleged statements were uttered. *See* Declaration of Joyce Chi at ¶ 8, attached hereto as Exhibit "C". Brown's unsworn allegations are uncorroborated by any additional source, and her story has varied throughout several interviews and statements she has given regarding the instant action. In two newspaper articles, the Plaintiff provided statements that she was discriminated against by Dr. Kur, because she is black and because she is a woman, neither of which is mentioned in the complaint (and untrue and defamatory). *See* New York Post article and New York Daily News article attached hereto as Exhibits "D" and "E", respectively. Most telling is the Plaintiff herself admits that she was groggy at the time of the alleged incident, which might explain the falsity of her statements. *Id.*

Ultimately, this case will resolve on the merits. When it does this Court should set a hearing on the Rule 11 motion. Until that time, it should stand, the Plaintiff and her counsel

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

having had the opportunity to withdraw same. The cross-motion, however, should be rejected and denied. There is absolutely nothing to demonstrate that the Rule 11 motion was brought for an improper purpose, and, in fact, it was timely, and absolutely permitted to be served and filed – even at this stage of the litigation.

## II.  MEMORANDUM OF LAW AND ARGUMENT

### A. THE RULE 11 MOTION WAS TIMELY SERVED AND THE COURT'S RULING SHOULD BE DEFERRED UNTIL THE CONCLUSION OF THIS ACTION.

Although Rule 11 contains no explicit time limit for serving the motion, the "safe harbor" provision functions as a practical time limit and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission. *See In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003). The Advisory Committee has stated that, "[o]rdinarily the motion [Rule 11] should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely."[5] *See* Fed. R. Civ. P. Rule 11 (Advisory Comm. 1993 Amendment). In fact, there is nothing improper to serve such a motion early on in a case, even if atypical. *Safe-Strap Company, Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 (S.D.N.Y. 2003)(citations omitted). "If anything, parties that seek sanctions for the submission of a complaint are encouraged to file a Rule 11 motion promptly after the complaint is filed." *Id*. at n. 413. The Court in *Safe-Strap*, further noted that:

> Parties that initially remain idle after a Rule 11 violation has come to their attention risk the denial of their subsequent Rule 11 motion on the basis of unreasonable delay. *See, e.g. General Motors Acceptance Corp. v. Bates* (5th Cir.1992) 954 F.2d 1081, 1086– 1087 (affirming the denial of a Rule 11 motion filed two years and nine months after the alleged violation).

---

[5] In this case, the inappropriate paper is the complaint itself.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

****

**When, as here, the "inappropriate paper" averred to is the complaint, the foregoing considerations suggest that the party which hopes to secure sanctions for the submission of that pleading should move for sanctions promptly after the complaint is filed.**

*Id.* (emphasis added). The Defendants (and counsel) did exactly what this Court instructed parties to do in *Safe-Strap*, which is to serve (and then file) the Rule 11 motion promptly after the complaint is filed where it is the "inappropriate paper". As such, there was and is nothing improper in the Defendants serving and filing of their Rule 11 motion at this juncture of the litigation. Moreover, doing so, is not sanctionable in and of itself. Hence, the Rule 11 motion is timely. Furthermore, sanction issues under Rule 11 normally will be determined at the end of the litigation. *Id.* at 417 ("Courts ordinarily defer this determination [of a Rule 11 motion"] until the end of litigation.").[6] As such, it is respectfully requested that this Court defer ruling on the Rule 11 motion until the end of these proceedings, the Rule 11 motion having been timely filed.

## B. PLAINTIFF'S FACTUAL ALLEGATIONS LACK/LACKED EVIDENTIARY SUPPORT – THE MOTIONS SHOULD BE DECIDED AT THE END OF LITIGATION

The Plaintiff contends that her factual allegations have evidentiary support. Response Memorandum at pp. 7-14. Plaintiff's entire case stands on the same six (6) alleged actions taken

---

[6] In so holding, the Court cites to *Mann v. G &G Mfg., Inc.,* 900 F.2d 953, 960 (6th Cir. 1990)("[A] Rule 11 motion is generally determined at the end of the proceedings."); *Archie Comic Publications, Inc. v. Decarlo* (S.D.N.Y. Nov. 21, 2000) No. 00 Civ. 5686 (LAK), 2000 WL 1731341, at *1 ("'[T]he time when sanctions are to be imposed rests in the discretion of the trial judge.' " Indeed,...this " 'normally will be determined at the end of the litigation' in the case of pleadings...."); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.* (S.D.N.Y. May 2, 2000) No. 00 Civ. 1115(LAK), 2000 WL 528633, at *1 ("The Advisory Committee Note to the 1983 amendment to Rule 11 makes clear that '[t]he time when sanctions are to be imposed rests in the discretion of the trial judge...[I]t is anticipated that, in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation....' "); *Wallace v. Life Ins. of North America* (S.D.N.Y. Feb. 22, 1996) No. 93 Civ. 6056(CSH), 1996 WL 79329, at *1 ("[I]t is the Court's practice to defer resolution of Rule 11 issues until the end of the litigation.").

by the Defendants, which Plaintiff alleges constitute unlawful discrimination prohibited under various federal, state and local anti-discrimination statutes:

1) Dr. Kur called her "disgusting" and a "criminal" because of her ██████████;
2) Dr. Kur threaten to contact her insurance company to have her coverage dropped;
3) Dr. Kur and Westchester Oral refused to provide Brown a prescription for her pain.
4) Dr. Kur and Westchester Oral kicked her out of the dental office and telling her not to come back.
5) Dr. Kur and Westchester Oral failed to provide Brown with follow-up care or a referral for follow-up care after her dental procedure; and
6) Dr. Kur and Westchester Oral disclosed her ██████████ to prompt an investigation of her.

It is true that when "considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated.... [A]n attorney is entitled to rely on the objectively reasonable representations of the client.'" *Saltz v. City of New York*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001)(citation omitted). The Advisory Committee Notes to the 1993 amendments to Rule 11 emphasize the reasonable inquiry into factual allegations required by the rule:

> Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification. Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.

Fed. R. Civ. P. 11 (Advisory Comm. Notes 1993 Amendment).[7]

The Defendants contend that the Plaintiff's Complaint was filed for an improper purpose as well as without legal or factual support. *See* Fed. R. Civ. P. 11(b)(1). It is telling that the

---

[7] An example of this can be seen in the fact that the Plaintiff alleges severe emotional distress in her complaint, yet in discovery she has admitted that she has not treated with any medical professional for such emotional distress. *See* Complaint at ¶ 41; *see also* Exhibit "F", which is Plaintiff's Second Amended Answers to Defendants' Interrogatories Nos. 4 and 22).

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

Plaintiff and her counsel immediately released a video[8] and issued a press release regarding the alleged incident (attached hereto as Exhibit "G") in an attempt to destroy Dr. Kur's reputation, his life and professional livelihood (which he worked so hard to earn) without a concern for truth.[9]  It is the Plaintiff and her army of *pro-bono* lawyers (at this point more than five (5) have been involved and/or made appearances in this case), who are seeking to make examples for their agenda without consideration of the truth and the destruction they leave in their path.  Moreover, the Plaintiff, herself, readily admits that she was groggy when the statements and alleged threats were made, a fact that should not be diminished in value, and must be evaluated when taking her testimony and allegations into consideration.  *See* Article attached hereto as Exhibit "H"; *see also* Exhibits "D" and "E".  This is the context in which the Rule 11 motion should be considered. With this said, it is urged by the Defendants that the determination as to whether or not sanctions are appropriate should be determined at the close of this case, not now.  The Plaintiff (and counsel) are on notice, and upon the finality of the litigation, the Court will be in the position to make a ruling on these issues.  In any event, all the Defendants were required to do was put the Plaintiff (and counsel) on notice as required by Rule 11, which they did.  These issues should be adjudicated once and if the case is resolved on the merits.

---

[8] Brown's video, defaming Dr. Kur, was prepared by and with the express instructions of Lambda Legal. The video can be seen here as well as on her counsel's website.  https://hellobeautiful.com/2916216/hiv-positive-woman-sues-dentist-discrimination/

[9] To the New York Daily News, Brown advised via a statement that she was discriminated against because she was black and a woman, two allegations that have mysteriously disappeared in this case.  *See* http://www.nydailynews.com/new-york/westchester-dentist-denied-hiv-positive-woman-treatment-suit-article-1.2885184 (attached hereto as Exhibit "D").  These same allegations were repeated to the New York Post in a statement from Brown:  "[b]ecause I am black, because I am a woman, because I am HIV-positive, Dr. Kur treated me as less than a person …."  *See* http://nypost.com/2016/11/23/dentist-kicked-me-out-of-his-office-because-im-hiv-positive/ (attached hereto as Exhibit "E").

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

a) *The Plaintiff's Statements and "Personal Knowledge" Regarding the Defendants Alleged Discriminatory Actions*

Plaintiff's cross-motion relies on *UY v. Bronx Mun. Hos. Ctr.*, 182 F.3d 152, 156 (2d. Cir. 1999). However, *UY* is easily distinguishable from the instant matter on several points. First, the plaintiff in *UY* was not recently removed from sedation under a general anesthetic, as was the Plaintiff, when he made the complaint regarding discrimination against his supervisor. Further, in *UY*, the plaintiff's allegations were specific as to the alleged discrimination. In the instant matter, the Plaintiff's allegations that he called her "disgusting" and a "criminal" make no reference to her ███████. In fact, nowhere in the Plaintiff's allegations does she cite to any words or conduct by Dr. Kur that in any way relate or even infer to her ███████. Moreover, the *UY*, court went on to state, "Rule 11 requires an attorney to determine that 'allegations and other factual contentions **have evidentiary support** or…are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id*. (emphasis added); Fed. R. Civ. P. 11(b) (3) ("the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.") Plaintiff and Lambda Legal had every opportunity to investigate the evidentiary support regarding Plaintiff's allegations before and after the service of Defendants Rule 11 Safe Harbor letter, and despite a plethora of evidence to the contrary, determined to stand on the allegations. Here, any reasonable investigation would have kept an attorney from filling these pleadings.

Lambda Legal's position relies solely on the Declaration of Richard Saenz, Esq. ("Dec. Sanez"). There is no sworn statement from the Plaintiff. Sanez contends that Lambda Legal confirmed that the Plaintiff made statements to several government agencies regarding her treatment by the Defendants. *See* Dec. Saenz at ¶¶ 5, 8 and 11. Further, Lambda Legal, through

Saenz, claims to have conducted an interview with Melva McBean ("Ms. McBean"), the Plaintiff's friend and escort on the day of the alleged discriminatory conduct. However, in discovery, Plaintiff has stated under oath that no statement from Ms. McBean was taken in this case. *See* Exhibit "F" (Plaintiff's Second Amended Answers to Interrogatories No. 10). Not surprisingly, Plaintiff did not attach any affidavit or declaration regarding Ms. McBean's observations from such day even though Plaintiff's complaint alleges that Ms. McBean was present for the alleged discriminatory acts committed by Dr. Kur.

Not only did Plaintiff fail to produce any evidence further corroborating her unsworn allegations and statements regarding Dr. Kur's alleged discriminatory actions, her statements have varied throughout several interviews she has given since filing the instant action. *See* Exhibits "D" and "E" ("Because I am black, because I am a woman, because I am HIV-positive, Dr. Kur treated me as less than a person."); *see also* Exhibit "H" ("If I wasn't a Black woman living with HIV, Dr. Kur never would have treated me like less of a person."). Nowhere in the complaint, or in the Plaintiff's statements given to the New York State Education Department Office of Professional Discipline ("OPD"), the New York State Department of Health ("NYSDOH") and the United States Department of Health and Human Services Office of Civil Rights ("HHS OCR"), which Plaintiff relies on heavily to substantiate her claims, does she ever mention being discriminated against based on her race or gender.

Additionally, in the same articles, the Plaintiff states that during the conversation when she alleges Dr. Kur called her a "criminal" and "disgusting" she was admittedly still "groggy" from the general anesthetic she was placed under during the Procedure. *See* Exhibit "H" ("But when I woke up they brought me into this room with the doctor and a few of his assistants. I was groggy, so all I could see was his silhouette"). The fact that the Plaintiff was still so groggy that

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

she couldn't see during this conversation, which is integral to her claims, further calls into question the veracity of the Plaintiff's statements and "personal knowledge", which her counsel relied on such profoundly in crafting the complaint. It would be reasonable to presume such mental state would have been discovered during interviews Lambda Legal conducted with the Plaintiff prior to filing the complaint, as noted in Saenz's Declaration. *See* Dec. Saenz at ¶ 14. Moreover, Dr. Kur, Joyce Chi, an assistant who was present for the above detailed conversation, and Krystiana Sembos, Dr. Kur's receptionist, all stated under oath that the Plaintiff appeared to be groggy and "out of it" during the times she alleges the Defendants' discriminatory conduct occurred, to the point she was slurring her speech and required assistance merely to walk out of the office. *See* Exhibit "C" at ¶9 ("At the time of her departure Ms. Brown was still groggy and 'looked lost'"); *see also* Declaration of Krystiana Sembos attached hereto as Exhibit "I" at ¶ 4 ("Ms. Brown was noticeably groggy and still 'out of it' from her surgical procedure. Ms. Brown was having difficulties walking steadily and needed the help of her escort. Ms. Brown also had difficulties speaking and slurred her speech and was incoherent in her conversations with her escort.").

Plaintiff attempts to rely on a letter sent to Dr. Kur on August 1, 2016 (the "August Letter") by the OPD regarding the determination of the investigation prompted by the Plaintiff's complaint against Dr. Kur. The OPD determined that Dr. Kur **"may"** have been in violation of rules relating to intimidating patients. *See* OPD Letter Dated August 1, 2017 attached hereto as Exhibit "J". The specific rule Dr. Kur **"may"** have been in violation of, Regents Rule 29.2(2), states, "[u]nprofessional conduct shall also include…willfully harassing, abusing or intimidating a patient either physically or verbally."). Such rule does not mention anything regarding a violation based on discriminatory conduct. Further, the August Letter bears no mention to an

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

actual violation based on discrimination (or otherwise).   In addition,  following the conclusion of OPD's investigation, no disciplinary action was taken against Dr. Kur regarding his conduct. *See* Exhibit "J" ("No disciplinary action will be commenced at this time…").  Plaintiff and her counsel were in possession of such letter prior to the filing of the complaint and knew that after evaluating Plaintiff's complaint the OPD found no definitive violation had occurred (let alone for discrimination)  Further, no disciplinary action was taken by the NYS DOH or the HHS OCR following Plaintiff's complaints to each respective agency.   This all could have been confirmed by a simple phone call by counsel to OPD, NYS DOH, and the HHS OCR.

In the Plaintiff's Memorandum, Plaintiff fails to present any evidentiary support for the Plaintiff's allegation that Dr. Kur threatened to contact her insurance carrier to have her coverage dropped. This is pure speculation without any evidentiary support.  Furthermore, the declarations of Dr. Kur and Joyce Chi, who were present during Dr. Kur and the Plaintiff's conversations following the disclosure of her ████████, both state that Dr. Kur made no such threats to the Plaintiff.  *See* Exhibit "C"; *see also* Declaration of Dr. Kur attached hereto as Exhibit "K" at ¶25.

i.      *Plaintiff's Claims Regarding Follow-Up Care and Prescribed Medication*

In the Complaint, Plaintiff makes bold assertions that she was denied follow-up care and a prescription pain medication following the dental procedure based upon her ████████.  Such is patently false and completely uncorroborated by evidentiary support.   In the cross-motion, Plaintiff asserts that whether or not follow-up care was necessary is a question of fact and as such the Plaintiff's allegations are not baseless.  *See* The Plaintiff Memorandum at p. 12.  That, however, is not the law, nor is the fact that the case was not dismissed on a motion to dismiss determinative of whether Rule 11 sanctions should issue.  Documentary evidence provided to Plaintiff and Lambda Legal prior to the filing of the Complaint, and provided again in the

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

Defendants' Safe Harbor notice evidences that ███████████████████████████████
█████████████████████████████████████████████████. *See* The Plaintiff's
Dental Records attached hereto as Exhibit "L" at p. 26.     In the post-operative notes following
the completion of the dental procedure, Dr. Kur makes the notation, "████████" *Id.* Such short
hand is a custom in the dental industry meaning "follow-up as needed." *See* Declaration of Dr.
Kur, Exhibit "K" at ¶22.  It was and remains the Defendants' custom and practice only to
schedule a follow-up appointment following a tooth extraction procedure (as the Plaintiff
underwent) if complications arise or if the patient calls in requesting additional care. *Id.* at ¶ 21.
If the Plaintiff had experienced any complications she merely could have called the Defendants
and requested a follow-up appointment. *Id.*     She did not.     Furthermore, Dr. Kur made such
post-operative note, prior to learning of the Plaintiff's ████████ and as and not because of it.
Such is evidenced by ████████████████████████████████████████████████
█████████████████████████████████████████████. *See* The
Plaintiff's Dental Records, Exhibit "L" at p. 26 ("████████████████████████████████
████████"). As the Plaintiff concedes in the Complaint, Dr. Kur initially prescribed the
Plaintiff ████████ as a pain medication, but changed the prescription after being informed
████████ could have potential adverse reactions with other medications the Plaintiff was then
taken, which she failed to disclose to Dr. Kur. *See* Complaint at ¶22 and The Plaintiff's Dental
Records, Exhibit "L" at p. 4-7.

Dr. Kur did not fail to provide follow-up care to the Plaintiff based on any discriminatory
means, let alone the Plaintiff's ████████, but followed the same custom and practice as he
would treat any patient.  Moreover, such determination was made prior to Dr. Kur having any
knowledge of the Plaintiff's ████████. Finally, dental records indicating such were provided to

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

the Lambda Legal on or around August 12, 2016, over a month before Plaintiff's Complaint was filed. *See* The Plaintiff's Dental Records, Exhibit "L" at p. 17. Lambda Legal had ample opportunity to review such records and if a reasonable inquiry was conducted would have discovered the Plaintiff's allegation regarding follow-up care lacked required evidentiary support.

In her cross-motion, the Plaintiff alleges that, "Dr. Kur failed to prescribe a prescription-strength pain reliever after learning of her ██████ because he was discriminating against her." *See* The Plaintiff's Memorandum at p. 12. The Plaintiff and her counsel have not put forth one iota of evidence to support their claim that he failed to provide the Plaintiff a prescription for a pain medication following her procedure. That is because he did. However, once it was determined that ██████ could be a dangerous combination with her ████████████ he changed her to ████████. The Plaintiff's dental records, provided to Lambda Legal prior to the filing of the Complaint, ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████. *See* The Plaintiff's Dental Records, Exhibit "L" at p. 27 ("████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████".) Moreover, after the Plaintiff's dental procedure concluded, Dr. Kur noted in his post-operative notes that, "██████████████████████████████████████████." *See* Brown Dental Records, Exhibit "L" at p. 26. Such notation indicates that after the dental procedure concluded, ████████████ ████████████████████████████████████████████. However, shortly after such notation was made, ████████████████████████████████████████████████████

████████████████████████████████████████████████████. *See* The

Plaintiff's Dental Records, Exhibit "L" at p. 27. █████████████████████████

████████████████████████████████████████████████████████████████████████

████. *See* The Plaintiff's Dental Records, Exhibit "L" at pp. 4-7. Thus, Dr. Kur, in his

discretion as a licensed and board certified oral surgeon, decided not to prescribe the Plaintiff the

████████. *Id.* at p. 27. ("████████████████████████████████████████

███████████████████████.") Such notation was made by Dr. Kur in his notes for the

Plaintiff's dental file, and clearly illustrates that Dr. Kur did not change the prescription based

upon the Plaintiff's ████████, but for her own medical safety. The note goes on to state, ████

██████████████████████████████████████████████████████████." *Id.* Dr.

Kur did not change the other prescriptions provided to the Plaintiff. *See* Declaration of Dr. Kur,

Exhibit "K" at ¶15. The only medication changed was the one with possible adverse reactions

that could cause harm to the Plaintiff. *Id.* Moreover, in lieu of the narcotic, Dr. Kur instructed

the Plaintiff and her escort to take ████████, a more than suitable alternative. *Id.* at ¶19. This

was all in documentation available to Lambda Legal (and the Plaintiff) when they filed the

complaint as they had previously obtained the Plaintiff's dental records from the Defendants. the

Plaintiff's allegation regarding pain management medication does not substantiate a viable claim

under the causes of action alleged in the complaint. It is false, and belies dishonesty.

> ii.     *Dr. Kur's Conversations with the Westchester County Department of Health*

Plaintiff alleges that Dr. Kur disclosed Plaintiff's confidential ████████████████

with the Westchester County Department of Health ("WCDH") following Dr. Kur learning of

Plaintiff's ████████. To substantiate such allegation, Plaintiff relies on Dr. Kur's notes in the

Plaintiff's dental file, and an email sent by Dr. Kur to the WCDH. However, a cursory review of

**DAVIDOFF LAW FIRM, PLLC**

228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

such documents does not reveal any evidentiary support that Dr. Kur disclosed any of Plaintiff's confidential medical information to the WCDH. First, Dr. Kur did not contact the WCDH simply because he treated the Plaintiff, who is █████████. A simple review of the email Dr. Kur sent to the WCDH evidences that Dr. Kur contacted the WCDH because of the Plaintiff's failure to disclose her █████████ and then current medication regime. *See* Email dated May 24, 2016 attached hereto as Exhibit "M". Dr. Kur elaborates on such disclosure failures stating,



During my private consultation with the patient, I asked medical history questions, at no time during the surgical consultation did Patient "X" disclose her medical condition."

*Id*. Additionally, the email to the WCHD further evidences that even if Dr. Kur was upset with the Plaintiff after learning of her █████████, such frustration was caused by the Plaintiff's failure to disclose her medical conditions and medications, not her █████████ in and of itself. *Id.* Dr. Kur's conversations with the WCDH were not done with any discriminatory purpose, but because of the Plaintiff's failure to honestly and accurately disclose her medical history and medication regime, which put herself in danger. The notation in the Plaintiff's dental file that Plaintiff points to as evidence that Dr. Kur disclosed her confidential medical information reads, "[t]he patients file was discussed with the Westchester County Health Department to prompt an investigation." *See* the Plaintiff's Memorandum at p. 12. Such notation gives little to no detail as to what information Dr. Kur discussed with the WCDH and provides no evidentiary support

10 █████████████████████████████████████████████████████

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

for Plaintiff's allegation (let alone that Dr. Kur disclosed her ███████). A simple call by Lambda Legal prior to filing suit would have confirmed that no such disclosure was made.

Moreover, Mr. Saenz's own statements at the January 27, 2017 pre-motion conference demonstrate that Lambda Legal did in fact investigate Dr. Kur communications with WCDH, but failed to learn anything of consequence as to the Plaintiff's allegation. Mr. Saenz stated on the record, "Your Honor, my office has spoken with the Department of Health." *See* Tr. at 12:5-6. Mr. Saenz also stated that the purpose of the call was "to find out who did he speak with, what did he say." *Id.* at 11:24-25. Yet nowhere, in the Complaint and nowhere in the Plaintiff's Memorandum does Plaintiff or Lambda discuss their findings from such investigation. If after talking with the WCDH Saenz had found that Dr. Kur disclosed any of the Plaintiff's confidential HIV related information, Plaintiff would have presented it in either the complaint or in the cross-motion. Simply put, there exists no evidentiary support to substantiate Plaintiff's allegation that Dr. Kur disclosed her confidential ███████████ with the WCDH a fact known by Lambda Legal when it filed this action.

> b) *The Plaintiff's Claims Regarding New York State and Westchester County Human Rights Laws*

Plaintiff claims the alleged discriminatory conduct violates New York State and Westchester County Human Rights Laws ("NYSHRL" and "WCHRL" respectively). Plaintiff has put forth several cases that she claims supports her position. Yet these cases are easily distinguishable from the instant matter. In *Cahill v. Rosa*, the New York Court of Appeals held that the NYSHRL prohibits the denial of service to dental patients on account of their HIV status. *Cahill v. Rosa*, 89 N.Y. 2d 89 N.Y.2d 14, 21, 24 (1996). However, despite citing to such case, Plaintiff failed to provide even one piece of evidence proving that she was denied any dental service by the Defendants. To the contrary, she was provided all necessary services, and

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

given all the proper post-op materials.  *See* The Plaintiff's Dental Records, Exhibit "L".  Plaintiff

then cites to *D'Amico v. Commodities Exch. Inc.*, which held that a commodities exchange could

be liable for letting male traders verbally harass women on its trading floor.  *D'Amico v.*

*Commodities Exch. Inc.*, 235 A.D.2d 313, 314 (1997).  Such determination has no relevance to

the instant action, where Plaintiff does not allege sexual harassment, or discrimination in her

workplace.  Moreover, even if Plaintiff's allegations concerning Dr. Kur calling her a "criminal"

and "disgusting" are taken as true, they do not constitute violation of the NYSHRL or WCHRL

because such comments were not made with a discriminatory intent based on the Plaintiff's HIV

status.  As detailed *supra*, if Dr. Kur expressed any frustration towards the Plaintiff after finding

out her ███████, such was done because of her failure to disclose such fact, and not because of

her ██████.  *See* Email dated May 24, 2016, Exhibit "M".

   c)  *The Plaintiff's Claims Regarding Federal Financial Assistance*

  In the Complaint, the Plaintiff alleges that the Defendants receive federal financial

assistance, specifically funds from Medicare and/or Medicaid, for payment of dental services

provided by the Defendants.  *See* Complaint at ¶¶15; 54; 61.  Plaintiff argues that Dr. Kur does

accept federal financial assistance based upon his acceptance of health insurance carriers, Fidelis

and HealthPlex.  *See* the Plaintiff Memorandum at p. 13-14.  However, the Defendants did not

start accepting Fidelis until after the last date in which the Plaintiff was last seen by the

Defendants.  The Defendants did not apply to become a participating provider with DentaQuest

(Fidelis) until in or around January 2016.  *See* Westchester Oral Fidelis Information attached

hereto as Exhibit "N".  It was not until May 17, 2016 that Westchester Oral was accepted to be a

provider with DentaQuest (Fidelis), after the Plaintiff's first appointment with the Defendants.

*Id.* at p. 1.  Moreover, the Defendants did not begin offering Fidelis as an accepted plan to their

patients until in or around June 2016, and did not actually treat a patient with DentaQuest (Fidelis) until June 13, 2016. *Id.* at p. 23. Thus, at the time the Plaintiff was treated by the Defendants, and the alleged discriminatory conduct occurred, the Defendants were not yet receiving any federal financial assistance. Additionally, Plaintiff contends that the Defendants accept HealthPlex insurance carrier, in particular their GuildNet FIDA (Fully Integrated Duals Advantage) plan, which is for patients receiving both Medicaid and Medicare funding. *See* The Plaintiff's Memorandum at p. 13. However, Plaintiff proffers no evidence that the Defendants accept such plan as part of treating patients with HealthPlex as their insurance carrier. Plaintiff attaches a printout of the Defendants office listed on HealthPlex website, but such printout does not state which HealthPlex plans the Defendants accept. To the contrary, the Defendants do not accept the GuildNet FIDA (Fully Integrated Duals Advantage) plan. *See* Second Declaration of Kim Santucci at ¶7, attached hereto as exhibit "O". Thus, not only did the Defendants not accept Fidelis at the time the Plaintiff alleges the Defendants discriminatory conduct occurred, but the Defendants do not actually accept the HealthPlex plan which receives federal financial assistance that Plaintiff unsubstantially claimed they did.

### C. THE RULE 11 MOTION IS NOT AN IMPROPER ATTEMPT TO SUBSTITUTE SANCTIONS FOR A MOTION FOR SUMMARY JUDGMENT OR A MOTION TO DISMISS OR FOR AN IMPROPER PURPOSE

Plaintiff contends that the Rule 11 motion was inappropriate and an improper attempt to substitute for a motion to dismiss or motion for summary judgment. *See* The Plaintiff's Memorandum at pp. 16-21. As noted here, the Rule 11 motion was filed in accordance with the law, timely, and Defendants have correctly asked for the Court to delay ruling until the case is determined on the merits. These are all proper. In fact, this request undermines the very argument postulated by the Plaintiff and her counsel. Moreover, as noted *supra*, the claim that

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

the Rule 11 motion was filed and served for an improper purpose is without merit, and despite all the rhetoric in the cross-motion. *See* The Plaintiff's Memorandum at pp. 1 and 4. The purpose of a Rule 11 motion was to put the Plaintiff (and her counsel) on notice, and there is nothing improper with same, which is exactly what Defendants' counsel stated at the conference. *See* Tr. at 10:2-6, 9:11-13, 10:12-17, 11:7-18; 18:4-6. The position that the Defendants and their counsel have used the Rule 11 motion for an improper purpose lacks merit, is controverted by the transcript, and refuted further in Defendants' counsel's Declaration, which is attached as Exhibit "B" ("Declaration"). Defendants' counsel states (under oath) that:

- Defendants' counsel was not provided the opportunity to further explain (other than the statements above) the Defendants' rationale serving the Rule 11 safe harbor letter and proposed motion, and the request to file the Rule 11 motion at such an early stage in the case. Declaration at **¶7.**

- Defendants' position that this Court should not rule on the Defendants' Rule 11 motion until the conclusion of this case. *Id.* at **¶7.**

- The necessity for the Defendants to file the motion upon receipt of the complaint was necessary, as to put the Plaintiff and her counsel on notice of such position, so that the Defendants can recoup all of their defense costs and attorneys' fees from Plaintiff and her counsel, which would not be proper if the motion was filed at the conclusion of the case. *Id.* at ¶ **7.**

- The case law and advisory recommendation are consistent with the words Plaintiff's counsel spoke, i.e., from the outset of the filing of the complaint, the Defendants held the belief that the allegations contained therein were frivolous and unviable. By serving their Safe Harbor Letter on Plaintiff, with accompanying documentary evidence, the Defendants put Plaintiff and Lambda Legal on notice of, and provided Plaintiff with an opportunity to amend her pleadings or dismiss such before moving forward with litigation, as is the purpose of Rule 11. *Id.* at ¶10**.**

- If the Defendants waited to serve their Safe Harbor Letter, and subsequent Rule 11 Motion, (as encouraged by Plaintiff's counsel), they would have waived the opportunity to recover their attorneys' fees and costs for the defense of the action, as is provided for under Rule 11, since the rule does not permit such recover until after such time that the moving party has served the Safe Harbor Letter and provided the offending party notice and time to cure. If the Defendants had waited until after discovery is completed, which is expected to be over a year from the filing of the Safe Harbor Letter, the Defendants would not have had the opportunity to have their entitlement to recover those attorneys'

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

fees and costs incurred during the discovery process, as no such Rule 11 motion would have been on file and as proper notice and opportunity to cure would not have been afforded to the Plaintiff and her counsel. *Id.* at ¶19.

- Plaintiff's counsel was not provided the opportunity to express at the conference that this Court could have permitted the filing of the Rule 11 motion and hold it in abeyance pending the final disposition of the merits of the case. It is and never was the Defendants' desire or intent for the Court to rule on the motion at this time, rather at the conclusion of the case is when such decision should be made. *Id.* at ¶21.

- Plaintiff's counsel stated that the purpose for the Defendants request to file a motion for sanctions at this time was to put the Plaintiff and her counsel on notice of the Defendants' belief that the allegations contained in the Complaint are frivolous, among other issues raised by the Rule 11 motion and put Plaintiff and her counsel on notice of same so that the Court may consider the Rule 11 motion at the end of this litigation. *Id.* at ¶22.

These facts demonstrate clear that the Rule 11 motion was not filed for an improper purpose, but in accordance with federal law. However, as is meticulously detailed above, the Defendants have not alleged that Plaintiff's allegations contained in the Complaint are merely incorrect or may fail to prevail. To the contrary the Defendants have evidenced above that Plaintiff's allegations lack evidentiary support, which should have been known by Plaintiff and Lambda Legal prior to filing the complaint, or at the latest, following the service of Defendants' Safe Harbor letter. The issue of whether a reasonable inquiry into the facts and the law took place should be decided when this case concludes. Moreover, in her cross-motion, Plaintiff continually seeks to use exerts and out of context quotes from the transcript to attempt to evidence her allegation that the Defendants' Rule 11 motion for filed for an improper purpose. In once such instance, Plaintiff alleges misconduct on behalf of the Defendants stating, "[i]Instead, Defendants seek dismissal relief through a motion for sanctions, which by their own admission calls for credibility determinations.") *See* The Plaintiff's Memorandum at p, 17. Plaintiff goes onto quote from the transcript stating, "THE COURT: Would I be making

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

credibility determinations if the plaintiff submits an affidavit that calls into question the assertions in the affidavits that you supply? MR. DAVIDOFF: Yes.". TR at 5:22-25. Such back and forth between the Court and Mr. Davidoff was taken out of context and was simply Mr. Davidoff answering a question by the Court truthfully, not stating any intention to have the court make credibility determinations at this early stage of litigation. To the contrary, and as stated above, the Defendants' believe the Court should wait to rule on the Rule 11 motion until after the case concludes with a jury's determination of the allegations. This is to permit the jury to make the evaluation of the parties' and witnesses' credibility, rather than this Court sit as the trier of fact.

Further, Plaintiff and Lambda Legal point to the fact that the Defendants initially filed a request for a pre-motion conference to discuss a motion to dismiss the Complaint. *See* The Plaintiff's Memorandum at p. 17. The Defendants determined that they could not meet the threshold set for a motion to dismiss given that his Court must take the Plaintiff's allegations (no matter how false) as true. However, such decision did not affect the Defendants belief regarding the nature of Plaintiff's Complaint, and the Rule 11 motion would have been requested regardless of the outcome of a motion to dismiss. Such sentiment was echoed by Defendants' counsel at the pre-motion conference when he stated, "Your Honor, just briefly, and I'm going to address on the motion to dismiss, there were certain elements that we did not believe, in a motion to dismiss we would be able to overcome." *See* Tr. at 8:7-10. Additionally, by filing their Rule 11 motion, it was not the Defendants' intention to force a determination on the merits of Plaintiff's complaint at this early stage of litigation. As noted above, the Defendants' merely intended to put the Court and Plaintiff on notice, and for the Court to hold the motion in abeyance until the case concludes. Despite Plaintiff's contentions, the Defendants did not act

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

with an improper purpose in filing their Rule 11 motion. To the contrary, the Defendants and their counsel were acting in accordance with relevant case law and Advisory Committee edicts to disclose, provide notice, and then file a Rule 11 motion immediately upon discovering issues that mandate same. Defendants and their Counsel were reasonable in their allegations in the Rule 11 motion as a review of the Complaint, conversations with witnesses, statements under oath, and substantial documentary evidence demonstrates that Plaintiff's allegations lack sufficient evidentiary support, which should have been known by Lambda Legal (or was known). There was no bad faith and the cross-motion is nothing more than a red herring given that the Defendants are clear in their request that the Court defer ruling until this case concludes.

Even at this early stage of the case, all which was known prior to the filing of this action, it is clear that the Plaintiff maliciously filed a frivolous lawsuit. The allegation that the Defendants discriminated against her because of her ▓▓▓▓▓ is controverted by the fact that the Plaintiff was successfully treated (including treatment after it was discovered that she was ▓▓▓▓▓), and that the alleged altercation and alleged conduct that the claims are based upon all occurred after the discovery that the Plaintiff failed to disclose her status. There are no allegations of any words or conduct that mention the ▓▓▓▓▓, nor can her ▓▓▓▓▓ be inferred from such alleged conduct and/or statements. There is zero evidence that the Defendants disclosed the Plaintiff's identity to any third person, nor is there any evidence that the Defendants had been paid or accepted any federal funding. What is clear is that the Plaintiff lied to the Defendants about her medical history, the Defendants altered the Plaintiff's pain medication based on their concerns for the Plaintiff's health and safety, the Plaintiff sought no medical or dental treatment for any complications from the dental procedure that the Defendants performed or from the alleged emotional distress she incurred, but the Plaintiff and her pro-bono

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

attorneys issued a defamatory press release and video that casts the Defendants as bigots, racists and sexists (the latter of which is absent from this complaint).  It is beyond even Rule 11 sanctions that can undo the vicious and malicious harm that the Plaintiff and her counsel have cause the Defendants, but this Court should defer ruling on this issue until the conclusion of this case.

## CONCLUSION

For the reasons stated above, the Court should defer ruling on the Rule 11 motion until the conclusion of this case and deny Plaintiff's cross-motion against the Defendants, Mr. Davidoff, and the Davidoff Law Firm.   At the conclusion of the case, it is respectfully requested that the Court sanction the Plaintiff and Lambda Legal as requested in the Rule 11 motion.

Dated: April 20, 2017
New York, New York

DAVIDOFF LAW FIRM, PLLC
*J/M/D*
Jonathan Marc Davidoff, Esq. (#JD9157)
*Attorneys for Plaintiff*
228 East 45th Street, Suite 1700
New York, New York 10017
Tel:  212-587-5971
Fax:  212-658-9852

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THIS 20th day of April, 2017, that a copy of the foregoing Memorandum in Further Support of Defendants' Motion for Sanctions and in Opposition to Plaintiff's Cross-Motion for Sanctions was emailed to counsel for the Plaintiff, and filed via ECF/CM to all parties of record.

DAVIDOFF LAW FIRM, PLLC

*J/M/D*
Jonathan Marc Davidoff, Esq.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852