# Exhibit "A"

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
YVETTE BROWN, 30 Roosevelt Drive,
W. Haverstraw, NY 10993,

                Plaintiff,

        v.                               16 Civ. 9118(NSR)

                                         CONFERENCE

DR. BENJAMIN KUR,
WESTCHESTER ORAL & MAXILLOFACIAL
ASSOCIATES, PLLC,

                Defendants.
------------------------------------x

                                         United States Courthouse
                                         White Plains, N.Y.
                                         January 27, 2017
                                         10:35 a.m.




Before:   THE HONORABLE NELSON S. ROMÁN,

                                         District Judge



                        APPEARANCES

LAMBDA LEGAL
     Attorneys for Plaintiff
RICHARD SAENZ


DAVIDOFF LAW FIRM, PLLC
     Attorneys for Defendants
JONATHAN MARC DAVIDOFF
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1            THE DEPUTY CLERK:  Brown v. Kur, et al.

2            Would counsel please state their appearances for the

3    record, beginning with the plaintiff.  And please take the

4    microphone and pull it towards you.  Thank you.

5            MR. SAENZ:  Good morning, your Honor.  Richard Saenz,

6    S-A-E-N-Z, Lambda Legal, 120 Wall Street, 19th floor, New York

7    City, New York, 10005, for Ms. Brown.

8            THE COURT:  Good morning.

9            MR. DAVIDOFF:  Good morning, your Honor.  Jonathan

10   Davidoff, Davidoff Law Firm, on behalf of the defendants.

11           THE COURT:  Good morning.

12           MR. DAVIDOFF:  I'll be only one talking, your Honor,

13   but this is Adam Frank, my associate.

14           THE COURT:  Okay.  This matter is on for an initial

15   pretrial conference as well as a premotion conference.

16           Do you want to tell me a little bit about the claims

17   that you're asserting in the complaint.

18           MR. SAENZ:  Yes, your Honor.

19           On behalf --

20           THE COURT:  You can remain seated.  I tend to ask a

21   lot of questions.

22           MR. SAENZ:  Okay.

23           THE COURT:  You're going to grow tired standing and

24   sitting and standing and sitting.  It's something that I kind

25   of developed after having children.  Tires them out.  Wears

1  them down. And they basically just concede to do whatever I
2  tell them to do.
3           MR. DAVIDOFF:  Doesn't work for me.
4           MR. SAENZ:  Your Honor, Ms. Brown raises six claims,
5  three federal claims, including discrimination on the basis of
6  her HIV status, by Dr. Kur and his offices under the Americans
7  With Disabilities Act.  In addition to the ADA, we include
8  claims under the Rehabilitation Act and the Affordable Care
9  Act.  Ms. Brown also has claims under the New York State Human
10 Rights Law again for discrimination on the basis of her
11 disability, the Westchester County Human Rights Law, and an
12 additional claim under the New York State HIV confidentiality
13 law for unauthorized disclosure of her medical information by
14 Dr. Kur or his staff.
15          THE COURT:  Is there a similar claim under HIPAA?
16          MR. SAENZ:  We are not raising a HIPAA claim.  The New
17 York State claim is specific to HIV-related information.
18          THE COURT:  I'm just asking because I would think that
19 if the information was disclosed, that there might also be a
20 HIPAA claim.
21          In any event, your client denies the allegations?
22          MR. DAVIDOFF:  Yes, your Honor.  And we've detailed
23 the reasons why their causes of action fail to the plaintiff in
24 our proposed Rule 11 motion.
25          THE COURT:  Yes.  I mean, it looks like you're raising

1   a lot of credibility issues there.
2            MR. DAVIDOFF:  Judge, number one, we've produced
3   documentary -- I'm sorry.
4            THE COURT:  Because the question is one of whether or
5   not the factual allegations in the complaint are sufficient to
6   assert the claims, right?  A valid claim or a plausible claim.
7   That's the federal standard, right?  And then you're making
8   factual disputes about what transpired.  The plaintiff is
9   making certain factual allegations.  They dispute your account.
10  And you dispute their account of what transpired.
11           MR. DAVIDOFF:  Well, your Honor, under their claims
12  and under the statutes, certain things have had to happen.  We
13  provided them documentary evidence in our Rule 11 motion.
14           THE COURT:  Was there an affidavit from your client?
15           MR. DAVIDOFF:  There was affidavits as well.
16           THE COURT:  All right.
17           MR. DAVIDOFF:  There's been affidavits not only from
18  the staff and the people that were present.  There's
19  documentary evidence to establish --
20           THE COURT:  So if there's an affidavit basically that
21  calls into question some of the facts that you believe your
22  affidavit would support, what does that mean?
23           MR. DAVIDOFF:  Well, your Honor, I haven't seen an
24  affidavit.
25           THE COURT:  That's not what I asked.  See, this is the

1   one place.  This is the one place where I get to ask the
2   questions and I get to frame the questions.  So do me a favor.
3   Don't reframe my question.
4           MR. DAVIDOFF:  Sure, your Honor.
5           If there is an affidavit that's posed, then that would
6   dispute -- they're going to put into question a fact.  However,
7   that affidavit I would presume would be from the plaintiff
8   herself, which we would contest that it would be self-serving.
9           THE COURT:  And your clients' statements wouldn't be
10  self-serving as well?
11          MR. DAVIDOFF:  We have from nonparty.
12          THE COURT:  Nonparty who are what, employees?
13          MR. DAVIDOFF:  Correct.
14          THE COURT:  They have no interest?
15          MR. DAVIDOFF:  Well, Judge --
16          THE COURT:  They may not be interested in the legal
17  sense, but --
18          MR. DAVIDOFF:  Well, Judge --
19          THE COURT:  From what you're saying, then I would be
20  making credibility determinations, right?
21          MR. DAVIDOFF:  Well, Judge, we're happy --
22          THE COURT:  Would I be making credibility
23  determinations if the plaintiff submits an affidavit that calls
24  into question the assertions in the affidavits that you supply?
25          MR. DAVIDOFF:  Yes.

1        THE COURT:  So, then, what would there be for me to
2   decide as far as your claim that the plaintiff is asserting
3   frivolous claims not supported in fact?
4        MR. DAVIDOFF:  Judge, I don't know if the plaintiff
5   would able to even make an affidavit to assert some of the
6   material elements that are required for the cause of action;
7   for example, whether treatment was provided.  She would have to
8   say that her extraction -- her tooth extraction didn't happen
9   or that there were no services that were rendered and that she
10  wasn't provided the instructions for the post-care.  If that's
11  the case, if she doesn't submit that, then their causes of
12  action fail.
13       THE COURT:  Is he correct?
14       MR. SAENZ:  He's not correct, your Honor.
15       I would ask your Honor to deny outright this request
16  to file the motion for sanctions.
17       THE COURT:  I can't deny someone the right to file a
18  motion. Right?  Because then I would be summarily asserting
19  that there's no merit to it without looking into the actual
20  merits of the claims.  Right?  So I can't deny anyone that
21  right.
22       MR. SAENZ:  Yes, your Honor.
23       To the point of whether she would have to supply an
24  affidavit, she has provided a complaint.  The complaint is
25  based on facts and a legal basis that goes through every

1  element.  If Mr. Davidoff or if defendants felt that this was
2  something that did not state the elements, the proper way to do
3  it would have been a motion to dismiss, which he submitted a
4  request, withdrew that, also.  So now here we are in a position
5  of having to address this request for a motion for sanctions
6  with an attempt to get discovery from us, trying to foreclose
7  Ms. Brown to even go forward with her case.
8          We ask your Honor to try to --
9          THE COURT:  Well, why would he be entitled to
10 discovery?
11         MR. SAENZ:  He's asking for discovery, for her to
12 submit an affidavit.
13         THE COURT:  On what basis?
14         MR. DAVIDOFF:  I never asked for an affidavit, your
15 Honor.
16         THE COURT:  Or the discovery he's asking for.
17         MR. DAVIDOFF:  I didn't ask -- I haven't made any
18 discovery demands yet.
19         MR. SAENZ:  Counsel just stated that Ms. Brown
20 wouldn't even be able to submit an affidavit.  Our position is
21 that the complaint itself is sufficient in pleading all of her
22 claims and that the case should go forward on that.  She should
23 not have to --
24         THE COURT:  What I'm saying is, in addressing the
25 sanctions motion, you would have to respond to it, correct?

1              MR. SAENZ:  Correct.

2              THE COURT:  So you would be addressing it just on the

3     merits?  You would be addressing on whether or not the

4     pleadings were sufficient?

5              MR. SAENZ:  Whether the pleadings were sufficient and

6     not frivolous, which we firmly believe they are not.

7              MR. DAVIDOFF:  Your Honor, just briefly, and I'm going

8     to address on the motion to dismiss, there were certain

9     elements that we did not believe, in a motion to dismiss, we

10    would be able to overcome.

11             THE COURT:  Right, but you didn't ask for a motion to

12    dismiss.

13             MR. DAVIDOFF:  Well, originally we submitted one.  We

14    withdrew our request to file a motion.

15             THE COURT:  Well, that's not what we're discussing.

16             MR. DAVIDOFF:  No, but that's the issue that he just

17    raised.

18             THE COURT:  So let's clear the air.  Are you going to

19    be moving for sanctions or moving to dismiss?

20             MR. DAVIDOFF:  For sanctions, your Honor.

21             THE COURT:  Okay.

22             MR. SAENZ:  And, your Honor, we have received an

23    answer to our complaint.

24             THE COURT:  Okay.  Let me ask a different question.  I

25    initially had some difficulties with the proposed discovery

1    plan, but I'll sign it.  I'll go along with it.

2            You think this is a case that's going to require

3    discovery -- discovery is going to take about 12 months?

4            MR. DAVIDOFF:  Your Honor, we believe that discovery

5    is going to take some time.  We believe that there's numerous

6    third-party -- nonparty witnesses.  For example, if you would

7    like --

8            THE COURT:  I don't understand why you're moving for

9    sanctions, then, if you think this is a case that's going to

10   take a year.

11           MR. DAVIDOFF:  Oh, Judge, on our Rule 11, the premise

12   of our Rule 11 motion is they made claims.  We're saying these

13   are not viable claims.  Here is the evidence to support it.

14   For example, the disclosure of the HIV status to the identity

15   of Ms. Brown as an HIV patient, we provided an e-mail where her

16   name never appeared, no information relating to her appeared.

17   It said patient X, which is the standard in the industry, in

18   the medical profession, when talking either to another

19   professional or seeking advice.  You don't put the person's

20   name.  You use patient X.  We provided that e-mail to them as

21   the basis of saying Ms. Brown's identity was never disclosed to

22   anybody.  The only time her identity and her HIV status

23   relating to Dr. Kur was ever --

24           THE COURT:  Yes, but the issue that I was trying to

25   raise is that you're making factual allegations that haven't

1  even been developed through discovery yet.
2          MR. DAVIDOFF:  Your Honor, but that's the purpose of
3  an early Rule 11 motion is to put them on notice, saying, hey,
4  you're shooting for the sun.  If you have any evidence to
5  refute this, okay, please produce it.  We're telling you right
6  now your allegation of disclosure --
7          THE COURT:  Isn't that something that's typically
8  produced during discovery, though?
9          MR. DAVIDOFF:  Well, we produced it.
10         THE COURT:  No, no, no.  You're looking at it from the
11 wrong end.
12         MR. DAVIDOFF:  Judge, I'm looking at it from the angle
13 of an individual and his company that have been sued and the
14 claims are frivolous.  We know it from the outset that they're
15 frivolous and, therefore, we let the plaintiff know, plaintiff,
16 your claims are frivolous.  These are the reasons why and
17 here's the evidence that we have to support it.
18         Now, of course, your Honor, as you know, going to
19 trial, you know, I can't just say, Judge, jury, here's the
20 e-mail.  We have to bring people in to produce the e-mail.
21 Then we have to bring people in to substantiate the e-mail and
22 so forth.  What we're saying here is, look, your claims, for
23 example, on the disclosure of the HIV, her name was never
24 disclosed.  Her identity was never disclosed.  Nothing relating
25 to her was ever disclosed.  However, you're suing my client.

1   My client shouldn't have to go through the entire process,
2   through trial, because you have a hunch or you're guessing.
3   And that's what we're saying.  If the plaintiff had said, oh,
4   yes, it was disclosed to Westchester, she could put in an
5   affidavit.  Yes, my name was disclosed to Westchester County,
6   my identity was disclosed and so forth, at this early stage,
7   but they're not.  It's a complete guess.  They haven't done
8   their due diligence.  They haven't reached out to the
9   Westchester County Department to obtain confirmation of
10  Ms. Brown's position.  And frankly, that's frivolous,
11  especially when you're now on notice.  They had notice of it.
12  That's the purpose of the safe-harbor period is, okay, you're
13  put on notice.  Go check it out.  Go find out.  Go look.  Go
14  consider this.  Get the evidence.  Maybe your client isn't
15  telling the truth.  And we know where they got it.  They got it
16  from a copy of her file.  That's the only reason why they even
17  know that there was any communication was because Dr. Kur
18  produced her medical file prior to this lawsuit.
19           MR. SAENZ:  Your Honor, in that medical file, it said
20  patient's file was discussed with Westchester County Department
21  of Health to prompt an investigation.  That is part of our
22  factual basis of bringing this claim.  It's more than an
23  e-mail.  The e-mail itself references contacts that Dr. Kur had
24  with the Department of Health.  We want to find out who did he
25  speak with, what did he say.  That should go forward in

1    discovery.

2             MR. DAVIDOFF:  Speak to the Department of Health.  You

3    should have done that before bringing a lawsuit and certainly

4    during the safe-harbor period.

5             MR. SAENZ:  Your Honor, my office has spoken with the

6    Department of Health.  If we go forward in discovery, we would

7    be happy to provide what's the relevant information that's in

8    response to a discovery demand.

9             THE COURT:  All right.  So here we have it.  For all

10   pretrial matters, this case will be referred to Judge Davison.

11   And we're hopeful that all discovery will be completed no later

12   than December 8th, 2017.  Expert depositions are to be

13   completed by March 9th, 2018.  And then the next case

14   management conference date before me is March 23rd, 2018 at 10

15   a.m.

16            It's a pretty lengthy discovery scheduling order.

17            MR. DAVIDOFF:  Your Honor, the concern that we have is

18   defendants --

19            THE COURT:  I didn't ask for a comment.

20            MR. DAVIDOFF:  Sorry.

21            THE COURT:  I didn't ask for a response.  I'm making

22   observations.  It's much longer than it needs to be, but I'm

23   going to sign it.  But I'm going to let you know that if you

24   come before me seeking extensions, if I'm unsympathetic, don't

25   be surprised.  This case doesn't require 12, 13 months to get

1   through discovery.  It really doesn't.

2           Are you still interested in filing your sanctions
3   motions?

4           MR. DAVIDOFF:  Yes, your Honor.

5           MR. SAENZ:  Your Honor, we understand that you cannot
6   deny him the right to file this motion for sanctions.  I would
7   like to address that this is -- we have had to respond to the
8   safe-harbor letter and respond to this request for the
9   premotion conference.  All of this, instead of going forward
10  with the case, my office has had to respond to.

11          THE COURT:  The case is going to move forward.  You
12  can file a motion, a cross-motion, saying that their motion for
13  sanctions is frivolous, and if I find that it is frivolous, I
14  could sanction them.

15          MR. SAENZ:  Thank you.

16          THE COURT:  All right.

17          What's the standard that I have to apply in reviewing
18  your sanctions motion?

19          MR. DAVIDOFF:  What's the standard?

20          THE COURT:  Yes.

21          MR. DAVIDOFF:  That the claims lack a basis in law
22  and/or fact.

23          THE COURT:  So what is it that you have to
24  demonstrate?  That their client lied?

25          MR. DAVIDOFF:  No.  It's reasonableness, your Honor.

1    That's why there's the safe-harbor letter, the 21 days, for
2    them to be put on notice that -- they're put on notice.
3            THE COURT:  So what is it that I'm determining?
4            MR. DAVIDOFF:  You're going to be determining whether,
5    based on the facts that are presented to you, the claims lack
6    factual support or legal support.
7            THE COURT:  And what am I looking at?
8            MR. DAVIDOFF:  You're going to be looking at the
9    evidence that we presented that their claims --
10           THE COURT:  What evidence?
11           MR. DAVIDOFF:  The evidence that has been submitted;
12   documentary evidence, the affidavits and so forth.  For
13   example, whether -- and I'll go back to the original issue,
14   whether services under the federal claims -- whether she was
15   denied services under the ADA.  The services were provided to
16   her.  She was only coming in for --
17           THE COURT:  What's your claim of discrimination?
18           MR. SAENZ:  Your Honor, once Dr. Kur knew of
19   Mrs. Brown's HIV status, he called her disgusting and a
20   criminal and told her to leave his office.  It's not just
21   receiving the treatment, but it's the entire office visit; that
22   she should not be made subject to disparaging remarks.  And
23   under the New York State Human Rights Law, it specifically says
24   that this includes making someone feel unwelcome, objectionable
25   or not acceptable, which we allege is exactly what Dr. Kur did

1   while he was in the office and continued to do so by reaching
2   out to the Westchester County Department of Health, as he said,
3   prompt an investigation against her.
4              THE COURT:  And that's not enough to start a claim?
5              MR. DAVIDOFF:  No, your Honor.  The issue with regards
6   to --
7              THE COURT:  So that means that anybody that walks into
8   a doctor's office, so long as the services are provided to
9   whatever degree, they can be spoken to in that fashion?  They
10  can be yelled at?  The doctors are free to make disparaging
11  remarks about their national origin or the color of their skin?
12             MR. DAVIDOFF:  Your Honor, no.
13             THE COURT:  I'm asking the question.  Do me a favor.
14             MR. DAVIDOFF:  No.
15             THE COURT:  You have a bad habit.
16             MR. DAVIDOFF:  We disagree.
17             THE COURT:  You have a bad habit of rephrasing my
18  questions.  Do me a favor.  Do not do that.
19             MR. DAVIDOFF:  Okay.  Your Honor, the answer is no.
20             THE COURT:  Is it a basis for bringing a lawsuit of
21  discrimination if that's the case?
22             MR. DAVIDOFF:  Is it a basis of discrimination?
23             THE COURT:  Meaning, if I walk into a doctor's office,
24  I receive some form of treatment, it is determined that I'm of
25  a particular race and the doctor then begins to disparage me,

```
 1   calling me names, saying that I'm disgusting based on my
 2   national origin.
 3            MR. DAVIDOFF:  Judge, I don't think that that would be
 4   a cause of action under the ADA.  There's also a --
 5            THE COURT:  It's not a Title VII claim,
 6   discrimination?
 7            MR. DAVIDOFF:  I don't believe so.
 8            THE COURT:  The doctor is treating me like every other
 9   patient that walks into that office?
10            MR. DAVIDOFF:  She was treated like every other
11   patient.
12            THE COURT:  That's not what I asked.
13            MR. DAVIDOFF:  I'm sorry.
14            THE COURT:  Again, you like to rephrase the questions,
15   so I'm not going to do this anymore.
16            How much time do you need to file your motion?
17            MR. DAVIDOFF:  Judge, we can file our motion Monday,
18   by Monday.
19            THE COURT:  How much time do you need to respond?
20            MR. SAENZ:  We would ask for two weeks, your Honor.
21            THE COURT:  All right.  We'll go off the record.  I'll
22   put together a briefing schedule.
23            MR. DAVIDOFF:  Your Honor, can I address one issue?
24            THE COURT:  No, you can't.
25            Are you going to be cross-moving?
```

1                MR. SAENZ:  Yes, your Honor.

2                (Pause)

3                THE COURT:  This is the briefing schedule.  The motion
4     is to be served on 2-17.  The opposition, plaintiff's
5     opposition and cross-motion, is to be served on 3-20.  The
6     reply and cross-opposition is to be served on 4-20.  And then
7     the reply is to be served on 5-5, May 5th.

8                When you serve your adversary, you have to
9     simultaneously serve two courtesy copies, hard copies, on
10    chambers.  And because of my motion schedule, the motions are
11    to be filed on May 5th.  Nothing gets uploaded onto the Court's
12    computer system until May 5th.

13                Any questions about the briefing schedule?  All right.
14    I take your silence to mean no.

15                Is there anything else that you want to bring to the
16    Court's attention at this time?

17                MR. DAVIDOFF:  Yes, your Honor.  There's two issues.

18                One, because we anticipate medical information, we
19    would request that the plaintiff produces a HIPAA release.

20                THE COURT:  That's part of discovery.

21                MR. DAVIDOFF:  Well, we're going to need the HIPAA
22    release to get --

23                THE COURT:  To get what?

24                MR. DAVIDOFF:  To get discovery from --

25                THE COURT:  Right.  To get discovery.  So what part of

```
 1   discovery?  You're making a sanctions motion.  You're saying
 2   you need discovery before you file your sanctions motion?
 3            MR. DAVIDOFF:  Well, your Honor --
 4            THE COURT:  Are you asking me for discovery for
 5   purposes of making a sanctions?
 6            MR. DAVIDOFF:  No, your Honor.
 7            THE COURT:  Okay.  So, then, you have a discovery
 8   scheduling order, right?
 9            MR. DAVIDOFF:  Correct.
10            THE COURT:  And that's something you're going to take
11   up with Judge Davison.  All right?
12            MR. DAVIDOFF:  Sure.
13            THE COURT:  What else?
14            MR. SAENZ:  Your Honor, I just want to state that we
15   do believe this is just an attempt to get discovery outside of
16   the discovery schedule and referring to the --
17            THE COURT:  That's not for me to deal with, right?
18   That's for Judge Davison, right?
19            MR. SAENZ:  Thank you.
20            THE COURT:  What else?
21            MR. SAENZ:  That's it.  Thank you.
22            THE COURT:  All right.  Is there anything further?
23   All right.  Good luck.
24            MR. DAVIDOFF:  Thank you, your Honor.
25                            - - - -
```